## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOBRAN SAAD AL-QUHTANI,**<br>    **Detainee,**<br>    **Guantanamo Bay Naval Station**<br>    **Guantanamo Bay, Cuba;**<br><br>**NAWAL MADAY AL-QUHTANI,**<br><br>    **as Next Friend of Jobran Saad Al-Quhtani;**<br><br>        *Petitioners/Plaintiffs*,<br><br><br><br>       **v.**<br><br><br><br>**GEORGE W. BUSH,**<br>    **President of the United States**<br>    **The White House**<br>    **1600 Pennsylvania Ave., N.W.**<br>    **Washington, D.C. 20500;**<br><br>**DONALD RUMSFELD,**<br>    **Secretary, United States**<br>    **Department of Defense**<br>    **1000 Defense Pentagon**<br>    **Washington, D.C. 20301-1000;**<br><br>**ARMY BRIG. GEN. JAY HOOD,**<br>    **Commander, Joint Task Force - GTMO**<br>    **JTF-GTMO**<br>    **APO AE 09360; and**<br><br>**ARMY COL. MIKE BUMGARNER,**<br>    **Commander, Joint Detention**<br>       **Operations Group - JTF-GTMO,**<br>    **JTF-GTMO**<br>    **APO AE 09360,**<br><br>        *Respondents/Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **AMENDED PETITION**<br>)    **FOR WRIT OF**<br>)    **HABEAS CORPUS**<br>)<br>)<br>)    **No.  05-cv-02387-RMC**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Petitioner Jobran Saad Al-Quhtani seeks the Great Writ.  Petitioner Al-Quhtani acts on his own behalf and through his Next Friend, Nawal Maday Al-Quhtani, his wife.  He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Al-Quhtani or to establish in this Court the lawful basis for his detention.  This Court should also order injunctive and declaratory relief.

## I. JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3), and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202, under 5 U.S.C. § 702, and under Articles I and II of, as well as the Fifth and Sixth Amendments to, the United States Constitution.  Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Nawal Maday Al-Quhtani, the Next Friend of Petitioner Jobran Saad Al-Quhtani, under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this

2

case involves an actual controversy within the Court's jurisdiction.  Finally, this Court is

authorized to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. §

1651.

## II.  PARTIES

3.      Upon information and belief, Petitioner Jobran Saad Al-Quhtani ("Petitioner Al-

Quhtani") is presently incarcerated at Guantánamo and held in Respondents' unlawful custody

and control.  *See* Authorization of Nawal Maday Al-Quhtani (attached hereto as **EXHIBIT A**).

4.      Petitioner Nawal Maday Al-Quhtani is Petitioner Jobran Saad Al-Quhtani's wife.  *Id.*

She is a citizen Saudi Arabia.  *Id.*  Because Petitioner Al-Quhtani has been denied unfettered

access to legal counsel and to the courts of the United States,  Petitioner Nawal Maday Al-

Quhtani acts as his Next Friend.  *Id.*

5.      Respondent George W. Bush is the President of the United States and Commander-in-

Chief of the United States Military.  Petitioner Al-Quhtani is being detained pursuant to

President Bush's authority as Commander-in-Chief, under the laws and usages of war or,

alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and

Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13,

2001) ("Executive Order").  Respondent Bush executed the Military Order that created the

military commissions and designated Petitioner Al-Quhtani a person eligible for trial by the

commission.  Respondent Bush is responsible for Petitioner Al-Quhtani's unlawful detention and

is sued in his official capacity.

6.      Respondent Donald Rumsfeld is the Secretary of the United States Department of

Defense.  Pursuant to the President's authority as Commander-in-Chief, under the laws and

usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al-Quhtani. Respondent Rumsfeld also commands the Office of Military Commissions established by the applicable Presidential Military Order, and is ultimately in charge of the prosecution of Petitioner Al-Quhtani by the Commission.  He is sued in his official capacity.

7.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner Al-Quhtani and is sued in his official capacity.

8.      Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al-Quhtani is presently held. He is the immediate custodian responsible for Petitioner Al-Quhtani's detention and is sued in his official capacity.

9.      Respondent Gordon R. England is Secretary of the Navy, and is Respondent Secretary Rumsfeld's designee for the Combatant Status Review Tribunals.

10.     Respondent John D. Altenburg, Jr., is the Appointing Authority for Military Commissions, and in that capacity exercises authority over the entire Commission process.

11.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.  STATEMENT OF FACTS

12.    Upon information and belief, Petitioner Al-Quhtani was seized in Pakistan in or around March 2002.  Petitioner Al-Quhtani is currently incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

13.    Upon information and belief, at the time of Petitioner Al-Quhtani's seizure and detention, he was not a member of the Taliban Government's armed forces or Al Qaeda.  He had not caused or attempted to cause any harm to American personnel or property prior to his detention.  Nor did he have any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.

14.    Upon information and belief, Petitioner Al-Quhtani has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

15.    Moreover, Respondents have now charged Petitioner Al-Quhtani with "crimes" that have been made up after the fact, and they intend to try Petitioner Al-Quhtani for those "crimes" before a military panel that they have appointed and over which they exercise reviewing authority.  The prospect of this lawless proceeding provides no basis for the continued detention of Petitioner Al-Quhtani.

16.    Petitioners seek to enforce Petitioner Al-Quhtani's right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that Petitioner Al-Quhtani is either an "enemy combatant" as defined by the

United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

17.     Upon information and belief, Petitioner Al-Quhtani is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 542 U.S. __, 124 S. Ct. 2633, 2639 (plurality) (2004).

18.     Moreover, upon information and belief, Petitioner Al-Quhtani is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

19.     Petitioners desire to pursue in the courts of the United States every available legal challenge to the lawfulness of Petitioner Al-Quhtani's detention and "trial" by military commission.

**The Joint Resolution**

20.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

21.     Upon information and belief, Petitioner Al-Quhtani did not participate in the armed conflict at any point in time; thus, he is not properly detained pursuant to President Bush's

authority as Commander-in-Chief, under the laws and usages of war, or under the Joint

Resolution.

22.    Upon information and belief, Petitioner Al-Quhtani is not, and has never been, a member

of Al Qaeda or any other terrorist group.   He had no involvement, direct or indirect, in the

terrorist attacks on the United States on September 11, 2001, or any act of international terrorism

attributed by the United States to Al Qaeda or any other terrorist group.   Nor did he participate in

the armed conflict at any point in time.   Consequently, Petitioner Al-Quhtani is not properly

subject to the detention order issued by President Bush or to President Bush's authority as

Commander-in-Chief or under the laws and usages of war.

### The Executive Order

23.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

> i.    is or was a member of the organization known as al Qaeda;
>
> ii.    has engaged in, aided or abetted, or conspired to commit, acts of
> international terrorism, or acts in preparation therefor, that have caused, threaten
> to cause, or have as their aim to cause, injury to or adverse effects on the United
> States, its citizens, national security, foreign policy, or economy; or
>
> iii.    has knowingly harbored one or more individuals described in
> subparagraphs (i) and (ii).

See Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).   President Bush must make

this determination in writing.   The Executive Order was neither authorized nor directed by

Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

24.    The Executive Order purports to vest President Bush with the sole discretion to identify

individuals who fall within its purview.   It establishes no standards governing the exercise of his

discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

25.     The Executive Order was promulgated in the United States and in this judicial district; the decision to incarcerate Petitioner Al-Quhtani was made by Respondents in the United States and in this judicial district; the decision to detain Petitioner Al-Quhtani at Guantánamo was made in the United States and in this judicial district; and the decision to continue detaining Petitioner Al-Quhtani, was, and is, being made by Respondents in the United States and in this judicial district.

26.     Petitioner Al-Quhtani is not properly subject to the Executive Order.

27.     Upon information and belief, Petitioner Al-Quhtani was not arrested or detained by the United States in the course of an armed conflict, and thus has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

8

**Guantánamo Bay Naval Station**

28.     On or about January 11, 2002, the United States military began transporting prisoners

captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay,

Cuba.  In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison

facility at Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp Five, an

additional maximum-security interrogation and detention center.

29.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in

the federal courts.  *Rasul v. Bush*, 542 U.S. __, 124 S. Ct. 2686, 2698 (June 28, 2004).

30.     In 2002, the precise date being unknown to counsel but known to Respondents, the

United States military transferred Petitioner Al-Quhtani to Guantánamo, where he has been held

ever since, in the custody and control of Respondents.

**The Conditions of Detention at Guantanamo**

31.     Since gaining control of Petitioner Al-Quhtani, the United States military has held him

virtually *incommunicado.*

32.     Upon information and belief, Petitioner Al-Quhtani has been or will be interrogated

repeatedly by agents of the United States Departments of Defense and Justice, and the Central

Intelligence Agency.  He has not appeared before a lawful military or civilian tribunal, and has

not been provided the means to contact or secure counsel.  Upon information and belief,

Petitioner Al-Quhtani has not been adequately informed of his rights under the United States

Constitution, the regulations of the United States Military, the Geneva Convention, the

International Covenant on Civil and Political Rights, the American Declaration on the Rights and

Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary

9

international law.  Indeed, Respondents have taken the position that he should not be informed of these rights.  As a result, Petitioner Al-Quhtani lacks the ability to protect or to vindicate his rights under domestic and international law.

33.    Upon information and belief, Petitioner Al-Quhtani has been forced to provide involuntary statements to Respondents' agents at Guantanamo.

34.    Upon information and belief, Petitioner Al-Quhtani has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.  *See*, *e.g.*:

    a.    Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005);

    b.    Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005);

    c.    United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005;

    d.    International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004;

    e.    International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004;

    f.    Amnesty International, *United States of America: Human Dignity Denied: Torture*

*and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at

http://web.amnesty.org/library/Index/ENGAMR 511452004); s*ee also*

g.    Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of

Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

35.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour

interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults,

removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually

interrogation techniques approved for use at Guantánamo by the most senior Department of

Defense lawyer.  *See e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to

Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee*

*Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and*

*Operational Considerations*, at 62-65 (Apr. 4, 2003).

36.    In a confidential report to the United States government, the ICRC charged the U.S.

military with intentional use during interrogations of psychological and physical coercion on

prisoners at Guantánamo that is "tantamount to torture."  *See* Neil A. Lewis, "Red Cross Finds

Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1.  The report includes

claims that doctors and other medical workers at Guantánamo participated in planning for

interrogations.  *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to

War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

37.    Since details of the ICRC's report emerged, new revelations of abuse and torture at

Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive

interrogation techniques" including 24-plus hour interrogations involving beatings, temperature

extremes, dogs, prolonged isolation, and loud music. *See e.g.*:

     a.     Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18

     b.     Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005);

     c.     *Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also*

     d.     Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11;

     e.     Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1;

     f.     Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1;

     g.     Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1;

     h.     Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

38.    As well, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*,

Jan. 27, 2005; *and see* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 89-90, Ch. 12, AMR 51/063/2005 (13 May 2005).

39.     In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture debacle —such as aggressive use of dogs, sexual humiliation, stress positions and sense deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Wash. Post*, July 14, 2005 at A1.

40.     The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

41.     As well, military defense lawyers have been instructed to materially limit their representation disfavorably to their detainee clients in violation of due process. *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005 at A25 (Late Ed.).

42.     Respondents, acting individually or through their agents, have stated that limitations, which normally apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense, *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. *See e.g.,* Amnesty International, "Guantánamo

and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR

51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't

Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture

by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

43.     In published statements, President Bush and Secretary Rumsfeld, and predecessors of

Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States

may hold the detainees under their current conditions indefinitely.  *See, e.g.,* Roland Watson, *The*

*Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last

night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of

some would be open-ended as the United States tried to build a case against them."); Lynne

Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the

detention mission, defended the temporary cells where detainees are being held […] 'We have to

look at Camp X-ray as a work in progress […]' Lehnert told CNN.  Lehnert said plans are to

build a more permanent prison 'exactly in accordance with federal prison standards'"); John

Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the

Bush Administration nears completion of new rules for conducting military trials of foreign

detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for

the tribunals and as a terrorist penal colony for many years to come.").

44.     According to the Department of Defense, detainees who are adjudged innocent of all

charges by a military commission may nevertheless be kept in detention at Guantánamo

indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, at

http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24,

2005).

45.     Counsel for Respondents have also consistently maintained that the United States may

hold the detained Petitioners under their current conditions indefinitely.  *In re Guantánamo*

*Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument

on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian

Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2,

2005, at A1.

46.     In fact, the Government has failed to release detainees even after they have been found

to be non-enemy combatants by the CSRTs. *See* Robin Wright, "Chinese Detainees Are Men

Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With

Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); *and* Ben Fox, "U.S. to Ease

Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005 at C4.

47.     The Government has recently acknowledged plans to begin constructing a new, more

permanent facility at Guantánamo.  Christopher Cooper, "In Guantánamo, Prisoners Languish in

a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo

Takes on the Look of Permanency," Jan. 9, 2005.

**Rendition**

48.     During interrogations, detainees have also been threatened with rendition or transfer to

countries that permit indefinite detention without charge or trial and/or routinely practice torture.

Upon information and belief, the United States has secretly transferred detainees to such

countries without complying with the applicable legal requirements for extradition.  This

practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting

detainees to torture.  *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's

"Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

49.    The U.S. government's practice of extraordinary rendition has been well documented

by American and international news organizations, including, *inter alia*, the *Washington Post*,

*The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to

news accounts:

> Since September 11, the U.S. government has secretly transported dozens of
> people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source.  The suspects have been taken to
> countries . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture and
> threats to families -- that are illegal in the United States, the sources said. In
> some cases, U.S. intelligence agents remain closely involved in the
> interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash.*

*Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects,"

*Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements

between the United States and other countries, such as Egypt . . ., that agree to have local security

services hold certain suspects in their facilities for interrogation by CIA and foreign liaison

officers.").

50.    In fact, the Government has recently announced its intention to render many

Guantanamo detainees to countries which have a poor record of respecting human rights and

which engage in torture. *See e.g.,* Matthew Waxman, "Beyond Guantanamo," *Wash. Times*, Aug.

20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees;

Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Times*,

August 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is Being Transformed, U.S.

Says," *NY Times*, August 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to Repatriate 110

Afghans Jailed at Guantanamo Bay," *LA Times*, Aug. 5, 2005 at A18.

51.     Moreover, upon belief and information, the Government is conditioning such rendering

of detainees to their home countries on the requirement that the home country imprison the

detainee, without regard to the detainee's individual factual or legal situation. *See* Robin Wright

and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching

Agreements With 10 Muslim Governments," *Wash. Post*, August 9, 2005, at A13; BBC

Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005

(available from LEXIS, MWP90 file) ("The US authorities declared few days ago that they

would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the

condition [that they are] to be put in jail").

52.     Upon information and belief, Petitioner Al-Quhtani is at risk of being rendered,

expelled or returned without lawful procedures to a country that engages in torture during

interrogations and incarceration.

**Military Commission**

53.     Upon information and belief, Respondents have held Petitioner Al-Quhtani for more

than three years without ever demonstrating a basis for his detention.   Nevertheless, on July 6,

2004, Respondent President Bush designated Al-Quhtani as a person eligible for "trial" by

military commission (the "Commission").

54.     The Commission was established by Presidential Military Order, dated November 13,

2001,  *see* 66 Fed. Reg. 57,833 (November 13, 2001) (hereinafter "PMO"), and the March 21,

2002, Military Commission Order No. 1 (hereinafter "MCO No. 1"), subsequently revised and re-issued on August 31, 2005  (A copy of revised MCO No. 1 is attached hereto as **EXHIBIT B**.)

55.     On November 9, 2005, over a year after Al-Quhtani was designated a person eligible for trial, charges against him were publicly released.  They were approved by Respondent Altenburg on November 4, 2005.  The charges allege one offense: Conspiracy.  *See United States v. Jabran Said Bin Al Qahtani,* Charge Sheet (attached hereto as **EXHIBIT C**).

56.      Lacking any lawful basis for Al-Quhtani's continued detention, Respondents seek to justify Al-Quhtani's detention by subjecting him to "trial" by military commission on purported war crime charges of Respondents' own creation and definition, never before recognized under international law, and using a procedure that also has been made up out of whole cloth.

57.     Some of the procedures for the military commissions under which Al-Quhtani will be tried were set up in the MCO No. 1.  *See* Exhibit B.  Many other procedures, fundamental to accepted concepts of due process and procedural fairness will be made up as the proceedings go along, precluding the accused from having any practical understanding of the procedures under which he will be tried.

58.      Even those procedures that have been clearly established are deficient and will not result in a full and fair trial.  Under these existing procedures, Respondent Secretary Rumsfeld has appointed an "Appointing Authority," Respondent Altenburg, a retired Army officer who is currently employed by the Department of Defense in a civilian capacity.  The Appointing Authority will in turn appoint members of the Commission.  Thus, Respondent Secretary Rumsfeld and his appointee, who are investigating and prosecuting Al Qahtani, will ultimately be responsible for choosing the panel that will judge him.  *Id.* at ¶ 6.  This violates the principle

established and universally accepted by civilized nations that no one should be a judge in his own

cause.  *See Federalist Papers #10* (James Madison)("No man is allowed to be a judge in his own

cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his

integrity.").

59.      During the military commission proceedings, there is no bar to admission of evidence

that courts normally deem unreliable -- such as statements coerced from Al-Quhtani at a time

when he had no counsel, or statements coerced from other detainees.  Indeed, witness statements

can be used even if the witnesses are not available to testify and their testimony is presented as

unsworn hearsay.

60.      There will be no direct appeal from a decision of the Commission.  *Id.* The proceedings

will be reviewed, but not in federal court.  The "review" provided by the PMO and MCO 1 is to

take place entirely within the Executive Branch, by officials appointed by the very officials

accusing Al-Quhtani of criminal misconduct.  Thus, not only has Al-Quhtani been held without

trial for over three years, there is no future prospect of a trial by an impartial tribunal based upon

reliable evidence.  Because Respondents' war crimes charges are indisputably invalid and the

Commission's process and procedures unlawful, Al-Quhtani seeks habeas relief with respect to

his unlawful detention and trial by the Commission.

61.      Just as there has not been and will not be an unbiased determination that Al-Quhtani is

guilty of any crimes, there also has been no determination by a neutral tribunal that Al-Quhtani

can justifiably be held as an enemy combatant.  On June 28, 2004, the United States Supreme

Court decided *Hamdi,* 542 U.S. 507, 124 S. Ct. 2633 (2004), in which it determined that

individuals could not be detained as enemy combatants unless such a determination was made by

a neutral tribunal that accorded them due process.

62.     Subsequently, the United States created a Combatant Status Review Tribunal ("CSRT") to make determinations as to whether those held were enemy combatants.  The CSRT was hastily formed in the wake of the Supreme Court's decisions in *Rasul* and *Hamdi*, and does not qualify as the neutral tribunal that satisfies the requirements of due process.  For example, the CSRT fails even to meet the standards for Article 5 hearings as set forth in U.S. Army regulations.

63.     The CSRT varies from both the Army regulations and *Hamdi* (and due process generally) materially and dispositively, including with respect to, *inter alia*:  (1) the standard of proof required [Regulation 190-8, §1-6(e)(9)'s preponderance of the evidence standard as opposed to the CSRT's "rebuttable presumption" that the detainee is an enemy combatant] ;  (2) the availability of an appeal by the government of a ruling favorable to the detainee; (3) the categories in which a detainee may be placed (*i.e.*, the CSRT fails to allow for prisoner of war (POW) status, but instead purport to determine only whether or not a detainee is an "enemy combatant"); (4) the detainee's right to counsel and/or representation by a personal representative of choice before the Tribunal; (5) whether the hearings are open to the public; (6) the government's reserved power to rescind or change the conditions of the Tribunals at its whim; (7) the composition of the Tribunal(s) (in contrast with *Hamdi's* requirement of "neutral decisionmaker[s,]" 542 U.S. at 533, 124 S. Ct. at 2648); and (8) even the definition of "enemy combatant."  These deficiencies are individually and collectively fatal to the CSRT.

## IV.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -- UNLAWFUL DEPRIVATION OF LIBERTY

64.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Al-Quhtani the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66.     To the extent that Petitioner Al-Quhtani's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

67.     To the extent that Petitioner Al-Quhtani's detention is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioner's detention is unlawful.

68.     Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### SECOND CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -- UNLAWFUL CONDITIONS OF CONFINEMENT

69.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Al-Quhtani to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

71.     Accordingly, Petitioner Al-Quhtani is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF

### GENEVA CONVENTIONS -- ARBITRARY DENIAL OF DUE PROCESS)

72.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

73.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Al-Quhtani the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

74.     Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

22

75.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

76.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF

### INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -- ARBITRARY DENIAL OF DUE PROCESS

77.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

78.    By the actions described above, Respondents have denied and continue to deny Petitioner Al-Quhtani the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

79.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE -- TORTURE

80.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

81.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical

and psychological abuse and agony upon Petitioner Al-Quhtani in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Al-Quhtani or for other purposes.  Among other abuses, Petitioner Al-Quhtani has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

82.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

83.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Al-Quhtani.

84.    Petitioner Al-Quhtani was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE -- WAR CRIMES

85.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

86.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Al-Quhtani constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

87.    As a result of Respondents' unlawful conduct, Petitioner Al-Quhtani has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT

88.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Al-Quhtani, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

90.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of

25

the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

91.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Al-Quhtani.

92.    Petitioner Al-Quhtani was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE --
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION

93.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

94.    The acts described herein constitute arbitrary arrest and detention of Petitioner Al-Quhtani in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

95.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Al-Quhtani in violation of the law of nations under the Alien

Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

96.    As a result of Respondents' unlawful conduct, Petitioner Al-Quhtani has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE-- ENFORCED DISAPPEARANCE

97.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Al-Quhtani in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

99.    As a result of Respondents' unlawful conduct, Petitioner Al-Quhtani has been, and continues to be deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

## TENTH CLAIM FOR RELIEF

### ARTICLE II OF THE UNITED STATES CONSTITUTION--
### UNLAWFUL DETENTION

100.  Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.  Petitioner Al-Quhtani is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. __, 124 S. Ct. 2633, 2642 n.1 (2004).

102.    By the actions described above, Respondent Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al-Quhtani and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Al-Quhtani.

103.    The military seizure and detention of Petitioner Al-Quhtani by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

104.    To the extent that Respondents assert that their authority to detain Petitioner Al-Quhtani

28

derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

105.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE APA -- ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION

106.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

107.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

108.    By arbitrarily and capriciously detaining Petitioner Al-Quhtani in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

109.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### VIOLATION OF THE APA -- ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS

110.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

111.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al-Quhtani the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

112.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT

113.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

114.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al-Quhtani to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

115.    Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS

116.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

117.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al-Quhtani's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al-Quhtani's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

118.     Accordingly, Petitioner Al-Quhtani is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### DUE PROCESS CLAUSE -- RENDITION

119.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

120.    Upon information and belief, Petitioner Al-Quhtani is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

121.    Accordingly, Petitioner Al-Quhtani is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### CONVENTION AGAINST TORTURE AND
### CONVENTION RELATING TO THE STATUS OF REFUGEES -- RENDITION

122.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

123.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of  Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

124.    Accordingly, Petitioner Al-Quhtani is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE-- RENDITION

125.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

126.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

127.    Accordingly, Petitioner Al-Quhtani is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## EIGHTEENTH CLAIM FOR RELIEF

### RESPONDENTS MAY NOT DETAIN PETITIONER AL-QUHTANI FOR TRIAL BEFORE AN INVALIDLY CONSTITUTED MILITARY COMMISSION

128.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

129.    The Commission in this case is invalid and improperly constituted, and the grant of subject matter jurisdiction to the Commission is overbroad and unlawful for at least the following reasons:

### A.    The Commission lacks jurisdiction because the President lacked congressional authorization to establish the Commission

130.    The Supreme Court has noted that "[w]hen the President acts in absence of . . . a congressional grant . . . of authority, he can only rely upon his own independent powers." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637, 72 S. Ct. 863, 872 (1952) (Jackson, J. concurring). *See also Hamdi v. Rumsfeld*, 542 U.S. ___, 124 S. Ct. 2633, 2650 (2004). The Constitution expressly grants Congress the sole power to create military commissions and define offenses to be tried by them. The Constitution vests Congress, not the Executive, with "All legislative powers," with the power "[t]o define and punish offences against the Law of Nations" and "[t]o constitute Tribunals inferior to the Supreme Court." U.S. Const., Art. I § 8, cl. 9, cl. 10.

131.    Congress has not authorized the establishment of military commissions to try individuals captured during the Afghanistan war. Accordingly, Respondents' detention of Petitioner Al-Quhtani for trial by the Commission is improper, unlawful and invalid as an *ultra vires* exercise of authority. It exceeds the President's powers under Article II and thus violates the constitutional principles of separation of powers.

33

132.    The Supreme Court's assertion of jurisdiction for the federal courts in *Rasul* establishes indisputably that aliens held at the base in Guantanamo Bay, no less than American citizens, are entitled to invoke the federal courts' authority under 28 U.S.C. § 2241. *Rasul,* 542 U.S. at ___, 124 S. Ct. at 2696 ("[c]onsidering that the statute draws no distinction between Americans and aliens held in federal custody, there is little reason to think that Congress intended the geographical coverage of the statute to vary depending on the detainee's citizenship") (footnote omitted). Thus, both Congress and the judiciary possess constitutional authority to check and balance the power of the Executive to act unilaterally. *Rasul*, 542 U.S. at ___, 124 S. Ct. at 2700 (Kennedy, J., concurring).

### B.    The Appointing Authority lacks power to exercise military authority to appoint a military commission

133.    Because there is no statute expressly stating who can appoint members of a Commission, the power to appoint members of a military commission is based upon the power to convene a general courts-martial. Only the Executive, the Secretary of Defense (or Secretaries of the other branches of the armed forces) or a commanding officer to whom the Secretary has delegated authority may convene a general court-martial.

134.    In this case, the Respondent Secretary Rumsfeld purportedly has delegated authority to John D. Altenburg, Jr. to appoint the members of military commissions. John D. Altenburg is a civilian, not a commissioned officer, and thus lacks the power to exercise military jurisdiction in any form.

135.    As a result, the Commission by which the Respondents intend to try Petitioner Al-Quhtani is improperly constituted and invalid, such that Petitioner Al-Quhtani is entitled to a writ

of habeas corpus preventing his unlawful detention and trial before that improper tribunal.

**C.    The Commission lacks jurisdiction to try individuals at Guantanamo Bay**

136.    Military commissions have no jurisdiction to try individuals far from the "locality of actual war." *See Milligan*, 71 U.S. at 127.

137.    The Commission that will try Petitioner Al-Quhtani is situated far outside any zone of conflict or occupation, and Petitioner Al-Quhtani's alleged conduct on which the charges are based did not occur at Guantanamo Bay. As such, the Commission lacks authority to try Petitioner Al-Quhtani, and therefore, the Respondents lack the authority to continue to detain Petitioner Al-Quhtani for any purported trial at Guantanamo Bay.

**NINETEENTH CLAIM FOR RELIEF**

**RESPONDENTS MAY
NOT DETAIN PETITIONER AL-QUHTANI FOR OFFENSES THAT HAVE
BEEN CREATED AFTER THE FACT**

138.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

139.    Respondent President Bush is attempting to try Petitioner Al-Quhtani for crimes that were created long after the alleged "offenses" were committed.

140.    Upon information and belief, none of the criminal offenses stated in the charges against Petitioner Al-Quhtani previously existed. These "offenses" were in effect created by the PMO, MCO No. 1, and Military Commission Instruction No. 2, well after they were allegedly committed by Petitioner Al-Quhtani. In essence, the government alleges that Petitioner Al-Quhtani is *criminally* liable for allegedly conspiring to participate in combat against the United States and its allies. That has never been a criminal offense.

35

## A.    The Executive cannot define crimes.

141.    Congress, not the Executive, has the authority to legislate under Article I of the Constitution. This expressly includes the power "[t]o define and punish . . . Offences against the Law of Nations." Absent Congressional authorization, the Executive lacks the power to define specific offenses. If he attempts to do so, as he has done here, his actions are *ultra vires* and violate the principles of separation of powers. Accordingly, Petitioner Al-Quhtani may not be detained for trial on newly-created offenses established and defined solely by the President.

## B.    Crimes cannot be defined after the fact

142.    In addition, any charges instituted by the Commission must constitute offenses under the law of war as it existed at the time the alleged conduct was committed. Applying laws created after the conduct (such as the definition of offenses set forth in MCO No. 2 and those which have been included in the charge against Petitioner Al-Quhtani) would violate the *ex post facto* clause of the Constitution (Art. 1, §9, cl. 3) and the principle that a person must have reasonable notice of the bounds of an offense. (Offenses defined to criminalize the conduct of a single person or group of people -- such as those in MCO No. 2 also violate the Constitutional prohibition on bills of attainder.)

143.    Since the charged conduct does not allege any offense against Petitioner Al-Quhtani under the law of war as it existed at the time he allegedly committed these acts, Petitioner Al-Quhtani cannot be detained as a result of the charge. Accordingly, Petitioner Al-Quhtani is entitled to a writ of habeas corpus, and Petitioner Al-Quhtani should be released immediately.

## **TWENTIETH CLAIM FOR RELIEF**

### **RESPONDENTS MAY**
### **NOT DETAIN PETITIONER AL-QUHTANI FOR TRIAL ON CHARGES**
### **OUTSIDE THE JURISDICTION OF THE MILITARY COMMISSION**

144.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

145.     Petitioner Al-Quhtani's confinement is unlawful because he is being detained to face a charge before a Commission that is not empowered to hear and/or adjudicate the charge instituted against him.  Petitioner Al-Quhtani's continued detention purportedly to face trial is unlawful because the charge is outside the parameters established by the Uniform Code of Military Justice (hereinafter "UCMJ"), 10 U.S.C. §801, *et seq.*, the statutory scheme that controls military detentions and that limits the offenses triable by military commissions (even in instances where Congress has provided any jurisdiction to the military commissions, which it has not with respect to the conflict in Afghanistan).

146.     Under the UCMJ, military commissions may not hear and adjudicate any offenses other than those that are recognized by the traditional law of war or those that Congress has expressly authorized them to hear.  Here, the charged offense is not within either of these categories.

147.     The purported offense of "conspiracy" is not a valid offense triable by the Commission under recognized principles of the law of war, the UCMJ, or any other statutory authorization. Because civil law countries do not recognize a crime of conspiracy, conspiracy has never been part of the laws of war.  No international criminal convention has ever recognized conspiracy to violate the laws of war as a crime.  This includes the Geneva Conventions, as well as those setting up the international criminal tribunals in Yugoslavia and Rwanda, as well as the

37

international criminal court.  Indeed, the government is making up charges that have been

specifically rejected as violations of the laws of war -- including at Nuremberg, for example.

148.     As a plurality of the Supreme Court held in *Reid v. Covert*:

> [t]he jurisdiction of military tribunals is a very limited and extraordinary
> jurisdiction derived from the cryptic language in Art. I, § 8 [granting Congress the
> power to "define and punish . . . Offences against the Law of Nations"], and, at
> most, was intended to be only a narrow exception to the normal and preferred
> method of trial in courts of law. Every extension of military jurisdiction is an
> encroachment on the jurisdiction of the civil courts, and, more important, acts as a
> deprivation of the right to jury trial and of other treasured constitutional
> protections.

> 354 U.S. 1, 21, 77 S. Ct. 1222, 1233 (1957).

149.     Since the charging document does not allege any offense against Petitioner Al-Quhtani

under the law of war or express statutory authority, the Commission lacks jurisdiction to try

and/or punish Petitioner Al-Quhtani.  Accordingly, Petitioner Al-Quhtani is entitled to a writ of

habeas corpus, and should be released immediately.

## TWENTY-FIRST CLAIM FOR RELIEF

### THE MILITARY COMMISSION
### PROCEDURES VIOLATE PETITIONER AL-QUHTANI'S RIGHTS UNDER
### STATUTORY, CONSTITUTIONAL, AND INTERNATIONAL LAW

150.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

151.     Even if the Commission had jurisdiction, Petitioner Al-Quhtani's detention to stand trial

before the Commission still would be unlawful because the Commission's procedures violate

applicable principles of statutory, constitutional, and international law.

152.     In a series of "Military Commission Orders" (the "MCOs"), issued on March 21, 2002,

Respondent Secretary Rumsfeld prescribed the procedural rules of these special military

38

commissions.  If Petitioner Al-Quhtani is tried according to these proposed procedures, he will receive less protection than he is entitled to under American law, the Constitution, and international law and treaties.  The procedures set forth by the MCOs provide Petitioner Al-Quhtani with far less protection than those set forth in the UCMJ.  The MCOs violate Petitioner Al-Quhtani's rights to certain basic procedural safeguards.  The MCOs fail to provide Petitioner Al-Quhtani an impartial tribunal to adjudicate the charges against him or review those charges. Petitioner Al-Quhtani's accusers effectively appoint the "judge and jury" and then review their decision.  And during these proceedings themselves, his accusers can introduce unreliable evidence of the worst sort -- unsworn allegations derived from coerced confessions with no right of confrontation.

153.    The absence of procedural protections makes the Commission inadequate as a matter of law.

### A.    The UCMJ

154.    Petitioner Al-Quhtani is entitled to the protections of the basic trial rights set forth by Congress in the UCMJ.  By its own terms, the UCMJ applies to all persons, including Petitioner Al-Quhtani, who are detained within the territory or leased properties of the United States.  And the UCMJ prohibits biased tribunals and the use of unreliable evidence of the sort the commissions intend to permit.

### B.    The Geneva Convention

155.    The Geneva Convention requires that prisoners of war ("POW"s), as defined by the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, be treated

with the same procedural protections as the soldiers of the country detaining them.   Under

Article 5 of the Geneva Convention (III) ("Article 5"), Petitioner Al-Quhtani is entitled to be

treated as a POW until a competent tribunal has determined otherwise.  As a result, he is entitled

to the procedural protections that would apply in a court martial.

156.    Even if Petitioner Al-Quhtani were not a prisoner of war, any proceeding would still have

to meet the requirements of Common Article III of the Geneva Convention and Article 75 of

Protocol I to the Geneva Conventions. These provide that conviction can only be pronounced by

an impartial court respecting generally recognized principles of judicial procedure.  Article 75 of

Protocol I to the Geneva Conventions specifically provides that no one can be compelled to

confess guilt.  Upon information and belief, Petitioner Al-Quhtani's interrogations defy the

requirements of Article 75, and the Conventions's requirements are not met by the Commission.

### C.    The Due Process Clause

157.    The Constitution's guarantee of due process also guarantees Petitioner Al-Quhtani the

basic trial rights he will be denied before the Commission.  A trial without these basic procedural

safeguards lacks the fundamental fairness required in any judicial proceedings -- especially in

criminal proceedings that can result in life imprisonment.

158.    Since the Commission procedures violate statutory, constitutional, and international law,

and in so doing, fail to provide Petitioner Al-Quhtani with the basic safeguards necessary to

constitute a fundamentally fair criminal proceedings, Petitioner Al-Quhtani is entitled to a writ of

habeas corpus and should be released immediately.

## **TWENTY-SECOND CLAIM FOR RELIEF**

### **TRIAL BEFORE THE COMMISSION
VIOLATES PETITIONER AL-QUHTANI'S RIGHT TO
EQUAL PROTECTION OF THE LAWS OF THE UNITED STATES**

159.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

> ### A.     **Petitioner Al-Quhtani's detention violates the Equal Protection Clause.**

160.     Petitioner Al-Quhtani is being detained by Respondents under the claimed authority of the PMO and MCO No. 1.  These Orders violate Petitioner Al-Quhtani's right to equal protection of the laws of the United States.  Under the PMO and MCO No. 1, Petitioner Al-Quhtani may be held for trial by the Commission only because of his alienage, since the Orders, by their terms, apply *only* to *non*-citizens.   Consequently, thus detention runs afoul of the very purpose of the Equal Protection Clause of the United States Constitution.

161.     The Supreme Court has held that any discrimination against aliens not involving governmental employees is subject to strict scrutiny.  Here, the government cannot show a compelling governmental reason, advanced through the least restrictive means, for granting *citizens* access to the fundamental protections of civilian justice (including, *inter alia*, indictment, evidentiary rules ensuring reliability and fairness, a system consistent with previously prescribed rules developed by the legislature and enforced by impartial courts, a jury trial presided over by an independent judge not answerable to the prosecutor, and the right to an appeal before a tribunal independent of the prosecuting authority), but affording *non-citizens* a distinctly less protective and inferior brand of adjudication.  While the government may have latitude in

41

differentiating between citizens and aliens in areas such as immigration, it has no such latitude with respect to criminal prosecutions.

162.    Thus, the blatant and purposeful discriminatory nature and impact of MCO No. 1 violates the Equal Protection clause.

### B.    Petitioner Al-Quhtani's detention violates 42 U.S.C. § 1981.

163.    Petitioner Al-Quhtani's detention for trial by the Commission also violates 42 U.S.C. § 1981.  That fundamental statutory provision guarantees equal rights for all persons to give evidence, to receive equal benefit of all laws and proceedings for the security of persons, and to receive like punishment.  Petitioner Al-Quhtani is being unlawfully detained for purposes of trial by the Commission solely because he is a non-citizen.  A citizen who committed the very same acts as Petitioner Al-Quhtani could not be detained under the PMO and held for trial before the Commission.  Accordingly, Petitioner Al-Quhtani's detention for trial by the Commission on that discriminatory basis is unlawful.

164.    Respondents have detained Petitioner Al-Quhtani for trial before the Commission in violation of equal protection of the laws of the United States.

165.    Accordingly, Petitioner Al-Quhtani is entitled to a writ of habeas corpus, a determination that the Commission proceedings against him are unlawful, and he should be released immediately.

### TWENTY-THIRD CLAIM FOR RELIEF

### RESPONDENTS HAVE DENIED
### PETITIONER AL-QUHTANI THE RIGHT TO A SPEEDY TRIAL AND THE RIGHT
### TO BE FREE FROM UNREASONABLE PRE-TRIAL CONFINEMENT

166.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

### A.    Petitioner Al-Quhtani was entitled to a speedy trial under the UCMJ.

167.    The PMO, pursuant to which Petitioner Al-Quhtani has been detained for trial, purports to be based, in part, on congressional authorization embodied in selected provisions of the UCMJ.  In promulgating the PMO, Respondent President Bush relied, in part, on his authority under 10 U.S.C. §836, which allows the Executive to prescribe rules for military commissions so long as they are not inconsistent with the UCMJ.

168.    However, the PMO, and its implementation through MCO No. 1, clearly contravene Article 10 of the UCMJ, 10 U.S.C. §810, which provides that any arrest or confinement of an accused must be terminated unless charges are instituted promptly and made known to the accused, and speedy trial afforded for a determination of guilt on such charges:

> [w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or dismiss the charges and release him.

10 U.S.C. § 810.

169.    Petitioner Al-Quhtani is a person subject to the UCMJ by virtue of Respondent President Bush's PMO and MCO No. 1, as well as by virtue of Article 2 of the UCMJ, 10 U.S.C. § 802(a)(12), which provides that "persons within an area leased by or otherwise reserved or acquired for the use of the United States" and under the control of any of the various branches of the military are subject to the UCMJ.  Under the Supreme Court's decision in *Rasul*, 542 U.S. at ___, 124 S. Ct. at 2696-98, Guantanamo Bay qualifies under both prongs.

170.    The type of delays to which Petitioner Al-Quhtani has been subjected are intolerable in the absence of extraordinary or compelling circumstances.  Here, the Respondents have not provided any reason whatsoever for their inordinate delays in charging Petitioner Al-Quhtani. Since Respondents did not take "immediate steps . . . to inform" Petitioner Al-Quhtani "of the specific wrong of which he is accused," they now have a clear and nondiscretionary duty under the UCMJ to "release him" from his confinement.

### B.    Petitioner Al-Quhtani was entitled to a speedy trial under the Geneva Convention.

171.    Petitioner Al-Quhtani's lengthy pre-trial confinement violates Article 103 of Geneva Convention (III), as well as United States government regulations.  Article 103 of  Geneva Convention (III) provides that:

> [j]udicial investigations relating to a prisoner of war shall be conducted as rapidly as circumstances permit and so that his trial shall take place as soon as possible. A prisoner of war shall not be confined while awaiting trial unless a member of the armed forces of the Detaining Power would be so confined if he were accused of a similar offence, or if it is essential to do so in the interests of national security. *In no circumstances shall this confinement exceed three months.*

6 U.S.T. 3316, 3394, 75 U.N.T.S. 135 (emphasis added).

172.    In addition, Article 5 of Geneva Convention (III) declares that:

> should any doubt arise as to whether persons . . . belong to any of the categories [entitled to protection as a P.O.W. under the Convention], such persons shall enjoy the protection of the present Convention until such time as their status has been determined by a competent tribunal.

173.    Likewise, §1-6(a) U.S Army Regulation 190-8, entitled Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees, requires that United States military forces abide by the provisions of Article 5 of Geneva Convention (III).  Similarly, the

Commander's Handbook on the Law of Naval Operations states that "individuals captured as spies or as illegal combatants have the right to assert their claim of entitlement to prisoner-of-war status before a judicial tribunal and to have the question adjudicated."  Department of the Navy, NWP 1-14M, The Commander's Handbook on the Law of Naval Operations 11.7 (1995).

174.    Respondents are under a clear nondiscretionary duty under Geneva Convention (III), and under the U.S. Army's (and Navy's) own regulations to release Petitioner Al-Quhtani because he has been detained in segregation for more than three months – indeed, for more than *ten times* the permissible period.

175.    Even if Petitioner Al-Quhtani were not a presumptive POW, the Geneva Convention would not sanction such delay.  The Geneva Convention requires that all civilians and protected persons must be "promptly informed" of the charges and brought to trial "as rapidly as possible."  Geneva Convention IV, art. 7.  Similarly the fundamental guarantees of Protocol I require that Petitioner Al-Quhtani be "informed without delay" of the particulars of charges, and incorporate the International Covenant on Civil and Political Rights.

## C.    Petitioner Al-Quhtani was entitled to a speedy trial under the Sixth Amendment.

176.    Moreover, the Sixth Amendment to the United States Constitution requires that in all criminal prosecutions, "the accused shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  Respondents' unlawful detention violates Petitioner Al-Quhtani's right to a speedy trial.

177.    Respondents have denied Petitioner Al-Quhtani his right to a speedy trial as required by American law, the Constitution, and international law and treaty, and Petitioner Al-Quhtani therefore is entitled to a writ of habeas corpus and immediate release.

## TWENTY-FOURTH CLAIM FOR RELIEF

### RESPONDENTS FAIL TO
### JUSTIFY HOLDING AL-QUHTANI AS AN ENEMY COMBATANT

178.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

179.    Just as the government has no authority to detain Al-Quhtani for his alleged violations under a nonexistent version of the law of war, the government has no authority to detain Al-Quhtani as an enemy combatant.    Respondents' actions to date in detaining Al-Quhtani constitute a violation of the process accorded persons seized by the military in times of armed conflict as defined by Geneva Conventions III and IV and customary international law, as well as being inconsistent with the provisions set forth below.

**A.    Under *Hamdi*, the Due Process Clause requires a neutral tribunal with significant procedural protections to determine whether Al-Quhtani is an enemy combatant.**

180.    The CSRT process and procedures that have now been established violate due process at least with respect to:  (1) the failure to adhere to an appropriate standard of proof; (2) the granting of an appeal to the government of a determination favorable to the detainee; (3) the failure to make an appropriate status determination by limiting the inquiry to consideration only of "enemy combatant" status; (4) the denial of a detainee's right to counsel or other appropriate representation; (5) the denial of a public hearing; (6) the government's power to arbitrarily rescind or change the CSRT process

46

and procedures; and (7) the failure to constitute the CSRT in a manner to assure a neutral decision maker.

**B.    The Geneva Convention and army regulations require that the enemy combatant determination be made by a fair tribunal.**

181.    Under Article 5 of the Geneva Convention, Al-Quhtani is entitled to a "competent tribunal" to determine whether he can be held as an enemy combatant.  The same procedural deficiencies that render the CSRT proceedings inadequate for purposes of due process also render the CSRT deficient as a competent tribunal.  Army Regulations 190-8 and the Administrative Procedures Act also show these procedures are unlawful as, for example, the burden of proof is not consistent with that established in the regulations.

182.    Moreover, it is now too late to establish a competent tribunal.  Article 5 of Geneva Convention III, provides that "should any doubt arise as to whether persons, having committed a belligerent act and having fallen into the hands of the enemy belong to any of the categories enumerated in [Article 4 of the Geneva Convention (III), defining the different categories of belligerents,] such persons shall enjoy the protection of the present Convention until such time as their status has been determined by a competent tribunal."

183.    Respondents have unlawfully detained Al-Quhtani in violation of their obligation to treat Al-Quhtani presumptively as a POW, as required by Article 5, and in violation of the procedural requirements of the Third and Fourth Geneva Conventions and customary international law more generally.  Thus, the government's failure to accord Petitioner Al-Quhtani the protections of Article

5 violates the provisions of Geneva Convention (III) as well as the U.S. military regulations promulgated to implement them.

### C.  The government cannot continue to hold Al-Quhtani under its own regulations.

184.    Indeed, even under the Army's own Regulations 190-8 at 1-6(g), "Persons who have been determined not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed."

185.    By arbitrarily and capriciously detaining Petitioner in custody for over three  years while claiming he is not entitled to prisoner of war status, Respondents have acted and continue to act *ultra vires* and in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).  Under the Army's own regulations, Petitioner cannot be held unless he has committed specific acts under which he can be punished.  But as alleged in the Counts on the Commission, the government has not charged Petitioner with any acts that could form a basis to hold him.

### D.  The government cannot continue to hold Petitioner Al-Quhtani as an enemy combatant once hostilities have ended.

186.    Under Article 118 of Geneva Convention (III), "[p]risoners of war shall be released and repatriated without delay after the cessation of active hostilities."  *See also Hamdi*, 542 U.S. at 520, 124 S. Ct. at 2641.  Respondents and their agents have acknowledged that hostilities in Afghanistan have ceased or will soon cease (even if they were ongoing to some extent until shortly before the Supreme Court's decision in *Hamdi*).  Similarly, Respondent Secretary Rumsfeld, in a joint May 1, 2003 press conference with Afghan President Hamid Karzai in Washington, announced that "we're

48

at a point where we clearly have moved from major combat activity to a period of stability and stabilization and reconstruction activities. The bulk of this country today is permissive, it's secure."

187.    Petitioner Al-Quhtani is presumptively a POW entitled to all protections afforded by Geneva Convention (III), including, under Article 118, release after hostilities have ceased.

188.    Petitioner Al-Quhtani also is entitled to the protection of Common Article 3 of Geneva Convention (III). Article 3(1)(d) prohibits the contracting parties from "passing. . . sentences . . . without previous judgment pronounced by a regularly constituted court, affording all the judicial guarantees which are recognized as indispensable by civilized peoples."

189.    In this case, the prolonged confinement of Petitioner Al-Quhtani without charge, and without process to contest his guilt or challenge his detention, amounts to an arbitrary and illegally imposed sentence that is incompatible with fundamental guarantees of due process recognized by all civilized people, in violation of Article 3 of the Geneva Convention (III), and in violation of the due process clause of the Fifth Amendment. Further, Respondents' confinement of Petitioner Al-Quhtani is a form of punishment in violation of the 8th Amendment to the Constitution. Accordingly, Petitioner Al-Quhtani is entitled to a writ of habeas corpus and should be released immediately.

## V.  PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.    Designate Nawal Maday Al-Quhtani as Next Friend of Jobran Saad Al-Quhtani;

2.    Order that Petitioner Al-Quhtani be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

49

3.    Order that Petitioner Al-Quhtani cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

4.    Order that Petitioner Al-Quhtani cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer with Petitioner Al-Quhtani, in private and unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioner Al-Quhtani, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Al-Quhtani;

8.    Order Respondents to show cause why a writ of *habeas corpus* should not be granted and why Al-Quhtani should not be immediately released;

9.    If an Order to Show Cause is issued, issue as part of the Order a schedule to receive briefing from the parties, including a factual return and a Response from Respondents, and a Reply from Petitioner, on the issues raised in this Petition, followed by a hearing before this Court on any contested factual or legal issues, and production of Petitioner Al-Quhtani as appropriate;

10.    Issue an Order declaring Commission proceedings unconstitutional and invalid and enjoining any and all Commission proceedings and/or findings against Petitioner Al-Quhtani;

11.    Issue an Order declaring the Combatant Status Review Tribunal unconstitutional and invalid, and enjoin its operation with respect to Petitioner Al-Quhtani;

12.    Issue an order declaring the Executive Order of November 13, 2001 *ultra vires* and an unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

13.    Issue a writ of mandamus and an Order that prohibits Respondents from using the PMO and/or the Military Commission Orders and Instructions to detain Al-Quhtani, or adjudicating charges against Petitioner Al-Quhtani, or conducting any proceedings related to such charges, because those Orders and instructions violate the U.S. Constitution, U.S. law, and U.S. treaty obligations, both facially and as applied to Petitioner Al-Quhtani and are therefore *ultra vires* and illegal;

14.    Determine and  declare that the prolonged, indefinite, and restrictive detention of Petitioner Al-Quhtani without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law;

15.    Determine and declare that Petitioner Al-Quhtani's detention violates the laws, treaties, and regulations of the United States; that the PMO is unconstitutional; that Al-Quhtani has been denied a speedy trial; and that Respondents lack any jurisdiction over Petitioner Al-Quhtani;

16.    Grant a writ of *habeas corpus* on behalf of Petitioner Al-Quhtani ordering his immediate release;

17.     Issue a writ of mandamus that directs Respondents to obey their clear, nondiscretionary duty to follow the Constitution, laws, regulations, and treaties of the United States, and therefore to release Petitioner Al-Quhtani immediately;

18.     Enter an Order that the Court shall retain jurisdiction over this matter to permit Petitioner Al-Quhtani to respond to arguments advanced by Respondents on matters related to his continued detention; and

19.     Grant such other relief on behalf of Petitioner Al-Quhtani and against Respondents as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

Date: December 20, 2005                    Respectfully submitted,


                                           A.J. KRAMER
                                           FEDERAL PUBLIC DEFENDER


                                                  /s/
                                           _____
                                           MARY MANNING PETRAS
                                           Assistant Federal Public Defender


                                                  /s/
                                           _____
                                           KETANJI BROWN JACKSON
                                           Assistant Federal Public Defender

                                           625 Indiana Avenue, N.W., Suite 550
                                           Washington, D.C.  20004
                                           (202) 208-7500

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify a true and correct copy of the foregoing instrument has been served by

Certified Mail, Return Receipt Requested, to the following persons:

**Kenneth L. Wainstein**
U.S. Attorney
District of Columbia District
Judiciary Center
555 4th Street, N.W.
Washington, DC 20530

**George W. Bush**
President, United States of America
The White House
1600 Pennsylvania Avenue, N.W.
Washington, DC 20500

**Alberto R. Gonzales**
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Avenue, N.W.
Room 5111
Washington, DC 20301-1000

**Donald Rumsfeld**
Secretary
U.S. Department of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

**Army Brig. General Jay Hood**
Commander, Joint Task Force-GTMO
JTF-GTMO
APO AE 09360

**Army Col. Mike Bumgarner**
Commander, Joint Detention Operations
  Group- JTF-GTMO
JTF-GTMO
APO AE 09360

**Brig. General Jay Hood**
United States Army
Army Pentagon
Washington, DC 20310-0200

**Army Col. Mike Bumgarner**
United States Army
Army Pentagon
Washington, DC 20310-0200

/s/
_____
MARY MANNING PETRAS

/s/
_____
KETANJI BROWN JACKSON

Dated: December 20, 2005