UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOBRAN SAAD AL-QUHTANI, by his wife and next friend, Nawal Maday Al-Quhtani,<br>        Petitioner,<br><br>    v.<br><br>GEORGE W. BUSH, President of the United States; DONALD RUMSFELD, United States Secretary of Defense; Brigadier General JAY HOOD, Commander, Joint Task Force, Guantánamo Bay, Cuba, and Colonel MIKE BUMGARNER, Commander, Joint Detention Operations Group, Joint Task, Guantánamo Bay, Cuba,<br>        Respondents. | 1:05-cv-2387-RMC |

### PETITIONER JOBRAN SAAD AL-QUHTANI'S EMERGENCY MOTION TO ENJOIN MILITARY COMMISSION PROCEEDINGS AGAINST HIM AT LEAST UNTIL ENTRY OF THE DECISION IN HAMDAN V. RUMSFELD (U.S. SUPREME COURT, DOCKET NO. 05-184)

Petitioner Jobran Saad Al-Quhtani respectfully moves this Court for an order enjoining further proceedings against him in a Military Commission, currently in progress at the U.S. Naval Base, Guantánamo Bay, Cuba, at least until the United States Supreme Court renders a decision in *Hamdan v. Rumsfeld,* docket number 05-184, or until such later time as may be necessary in light of such procedural or other guidelines that may be reflected by the opinion(s) of the United States Supreme Court in that case.

DOWNS
RACHLIN
MARTIN PLLC

**Present Status of Case**

This case is subject to a STAY ordered January 27, 2006 "pending the jurisdictional ruling of the District of Columbia Circuit." [Doc. 7]. The order was in reference to H.R. 2863, the Defense Appropriation Act (hereinafter DTA), particularly section 1005(e), entitled "Judicial Review of Enemy Combatants." The Court of Appeals for the District of Columbia Circuit has not ruled on the jurisdictional issue, although the applicability of the DTA is presently before the United States Supreme Court in *Hamdan v. Rumsfeld*, docket number 05-184 (hereinafter *Hamdan*), which was argued March 28, 2006 and is *sub judice*.

**Authority and Appearance of Undersigned Counsel**

The undersigned counsel appears pursuant to Local Rule 83.2(g) and certifies that he is handling this matter without fee and believes Petitioner to be indigent, within the meaning of the Rule. Further, the undersigned counsel appears in this matter, concurrent with other appearances of counsel, at the request of the Center for Constitutional Rights (hereinafter CCR), which was authorized by Petitioner's wife and next friend to assign counsel to represent Petitioner. A copy of the next friend authorization is appended as Exhibit A. A copy of the request to the undersigned counsel from CCR is appended as Exhibit B.

**Statement of Points and Authorities**

1. The validity, jurisdiction, and procedures of military commissions established by Presidential Military Order No. 1 (November 13, 2001) have been briefed and argued in the United States Supreme Court in *Hamdan*, pursuant to grant of a writ of

certiorari. Oral argument was held on March 28, 2006, and the case is presently *sub judice*.

2. Trial of an accused before a tribunal lacking jurisdiction, vested with constitutionally defective procedures, or otherwise invalid constitutes "irreparable harm" to the accused. *Hicks v. Bush*, No. 02-299-CKK (D.D.C. Nov. 14, 2005, mem. op.) (hereinafter *Hicks*) at 8; *Al Sharbi v. Bush*, No. 05-2348-EGS (D.D.C. May 12, 2006, mem. Op.) (hereinafter *Al Sharbi*), at 2. A copy of Judge Kollar-Kotelly's, Memorandum Opinion in *Hicks* is appended hereto as <u>Exhibit C</u>. A copy of Judge Sullivan's Memorandum Opinion in *Al Sharbi* is appended hereto as <u>Exhibit D</u>.

3. The harm, if any, to the United States from a delay of the military commission proceedings now in progress against Petitioner, consists in minor logistical inconvenience only and is, in any case, significantly less than the harm to Petitioner by virtue of his continued subjection to a proceeding that may be held to be invalid. *Hicks*, at 9; *Al Sharbi*, at 2-3.

4. The grant of certiorari in *Hamdan* by the United States Supreme Court attests, *eo ipso*, that Petitioner in the instant case has a substantial likelihood of success on the merits. *See Hicks*, at 13.

5. Whether the DTA constitutionally succeeds in stripping courts of the United States of jurisdiction to hear and determine petitions for writs of habeas corpus presented by detainees at the United States Navy Base, Guantánamo Bay, Cuba and whether, if it does, its effect is retroactive to cases, such as the instant case, which were pending when the DTA was enacted are issues raised by the United States Supreme Court during oral argument in *Hamdan* and have been raised *sua sponte* by the United

States Court of Appeals for the District of Columbia in the pending case of *Al Odah v. U.S.*, No. 05-5064 (D.C.Cir.) (*sua* sponte Order of January 4, 2006). A copy of the Per Curiam Order in *Al Odah* is appended hereto as <u>Exhibit E</u>. Thus, this Court need not address the effect, if any, or the retroactive versus prospective application of the DTA.

6. It is in the public interest that adjudicative proceedings of doubtful validity be suspended until their validity is decided by the highest court of the United States in a case now before it for decision. *Hicks*, at 11.

7. This Court, per Kollar-Kotelly, D.J. in *Hicks* and Sullivan, D.J. in *Al Sharbi* have previously enjoined similar Guantánamo military commission cases against the petitioners in those cases on essentially the same grounds advanced here. These cases are, in all pertinent respects, parallel to the instant case. Indeed, the Appointing Authority, which convenes military commissions <u>itself</u> ordered that Military Commission proceedings against Ibrahim al Qosi be stayed pending the outcome in *Hamdan*, as reflected in the December 17, 2004 ORDER of Friedman, J. in *Al Qosi v. Bush*, No. 04-1937 (hereinafter *Al Qosi*). A copy of Judge Friedman's ORDER is attached hereto as <u>Exhibit F</u>.

**Pertinent Facts**

Petitioner, Jobran Saad Al-Quhtani was designated (*sub. nom.* "Jabran Said bin al Qahtani") for trial by Military Commission by Presidential determination on July 6, 2004, more than two years after he was arrested by Pakistani police forces and turned over to United States forces. *See* Charge Sheet, <u>Exhibit G</u>. On information and belief, Petitioner was not served with charges until November 30, 2005 and appeared for the first time before the Military Commission

the week of April 24, 2006 – more than four years after he was first arrested. Petitioner's detailed military defense counsel is required to argue "law motions" on an unspecified date between July 10 – July 14, 2006 and/or July 24 – July 28, 2006. A copy of the latest Commission designation of trial terms, dated May 20, 2006, is attached hereto as Exhibit H. *See* designation of Petitioner's case for the weeks of July 10 and July 24. On information and belief, Petitioner's detailed military defense counsel has been ordered by the Military Commission to argue discovery motions on June 20, 2006 and submit "law motions" by June 26, 2006. Such proceedings will necessarily reveal defense strategy and embrace many of the same legal issues now *sub judice* in the United States Supreme Court in *Hamdan*.

**Ground for Emergency Relief**

Because further hearings in this case are imminent, Petitioner respectfully asks the Court to exercise its authority under LCvR 7(b) and require Respondents to reply in fewer than the eleven days provided in the Rule. This should occasion no hardship for Respondents, as they have already confronted this issue in *Hicks* and *Al Sharbi*, in which cases this Court granted a stay of Military Commission proceedings pending the outcome of *Hamdan*.

**Legal Standard**

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). There are four factors considered by the Court in its analysis of a motion for preliminary injunctive relief. To prevail, the moving party must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable harm without injunctive relief, (3) that an injunction would not substantially harm other interested parties, and (4) that issuance of the injunction is in the public interest. *Cobell v. Norton,* 391 F.3d 251, 258 (D.C. Cir. 2004);

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). In this Circuit, injury is irreparable only if it is "both certain and great." *Wisconsin Gas v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). This requires that the alleged harm "be actual and not theoretical" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (internal citation omitted)). The four factors are taken in totality. For example, the Court has held that an injunction may be issued by the court "with either a high probability of success and some injury, or *vice versa*." *Hicks*, at 13; *Al Sharbi* at 2 (both opinions quoting *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). A preliminary injunction is an "extraordinary measure," and should be granted only where the movant has met his burden of persuasion. *Cobell*, 391 F.3d at 258.

**Argument**

1. <u>The Grant of Certiorori in *Hamdan* by the United States Supreme Court attests, *eo ipso*, that Petitioner Has a Substantial Likelihood of Success on the Merits.</u>

Petitioner has a substantial likelihood of success on the merits. Grant by the United States Supreme Court of *certiorari* in *Hamdan* confirms that there are substantial arguments that the military commission has no jurisdiction. *See Hamdan*, 415 F.3d 33, 36-37 (D.C. Cir. 2005), *cert. granted* (No. 05-184). The Court of Appeals for the District of Columbia Circuit has held that a challenge to military commissions should be adjudicated pre-commission where the petitioner has raised any substantial arguments that the military commission has no jurisdiction. *Id.* at 36. Here, the Supreme Court's grant of *certiorari* in *Hamdan*, a case factually similar to this case, demonstrates a significant likelihood of Petitioner Al-Quhtani's success on the merits. *See id.*

Furthermore, this Court has made clear the gravity of the outcome of *Hamdan*. *Hicks*, at 13 ("...the court emphasizes that *Hamdan* is a unique, highly contentious case involving unprecedented and high-profile claims regarding the propriety of military commission jurisdiction"). In *Hicks*, this gravity and the imminent resolution of *Hamdan* combined with a strong showing of the other factors necessary for injunctive relief to persuade the court to allow an injunction to "rightfully 'preserve the relative positions of the parties' until the full and complete contours of military commission jurisdiction are elucidated by the nation's highest appellate court." *Id.* This Court, in *Al Sharbi*, was moved chiefly by the irreparable harm that continued proceedings before a possibly-unconstitutional tribunal would cause the petitioner in that case, as well as the evident impracticality of carrying on such proceedings when a decision in *Hamdan* was imminent. *Al Sharbi*, *passim*. Because the facts of *Hicks* and *Al Sharbi* are on all fours with this case, the court should similarly resolve that there is sufficient likelihood of success on the merits for injunctive relief.

2. Without Injunctive Relief, Petitioner Will Suffer Irreparable Harm Due to Prejudice.

Petitioner will suffer irreparable harm without an injunction, because of the prejudice he will suffer at any future tribunal, and the corresponding damage to his reputation. The Court has found irreparable harm where there exists a "clear and imminent risk of being subjected to a military commission which had not been ultimately determined by the Supreme Court to have jurisdiction over [a] Petitioner." *Hicks*, at 8. As this Court said in *Al Sharbi*, "The harm to the petitioner is undoubtedly irreparable. Next week, petitioner faces proceedings before a commission that may be deemed illegal within a month." *Al Sharbi*, at 2.

Here, if Petitioner is tried by a tribunal consequently deemed not to have jurisdiction over him, then he would have been tried by a tribunal without any authority to adjudicate the

charges against him in the first place, potentially subjecting him to a second trial before a different tribunal. *Hicks* at 9. Significantly, proceedings which ultimately may be determined to be unlawful cannot be "undone," and because jurisdictional authority is requisite for legal proceedings before any tribunal, Petitioner faces irreparable injury absent an injunction. *See id.*; *Cobell v. Norton*, 334 F.3d 1128, 1139 ("The remedy by appeal is inadequate. It comes after trial, and if prejudice exists, it has worked its evil and a judgment of it in a reviewing tribunal is precarious") (quoting *Berger v. United States*, 255 U.S. 22, 36 (1921)). In addition, the D.C. Circuit has previously held that the injury suffered by a party required to participate in proceedings overseen by an impartial judicial authority whom the party has objected to, is by its nature irreparable. *See Cobell*, 334 F.3d. at 1139.

Moreover, a trial, including any purely law-oriented proceedings before the actual presentation of evidence would give the prosecution a dry run and a free look at Petitioner's defense. There is nothing at present to prevent the Presiding Officer in Petitioner's Military Commission case from shortly transforming the proceedings into a forum at which evidence may be taken.[1] Even if the military commissions are later invalidated, a trial will do irreparable damage to Petitioner's reputation at an international level. Finally, an invalid trial would waste the government's money and pro bono counsel's time and resources.

3. <u>An Injunction Would Cause Insubstantial Harm to the United States, Because Any Harm Caused Would Be Merely Logistical.</u>

The only harm suffered by the United States is not evidentiary or prejudicial in nature, but rather merely logistical. *See Hicks*, at 9-10; *Al Sharbi*, at 2-3. For example, this court has found that concerns regarding loss of time and resources, a need for rescheduling, and

---

[1] The language of the trial calendar (<u>Exhibit H</u>) makes this clear: "Cases may be added to a trial term at any time."

speculative arguments regarding disruption of other military commissions proceedings are insufficient reasons to deny injunctive relief. *Hicks* and *Al Sharbi*, *loci cit.* The facts of this case are materially no different from those of *Hicks* and *Al Sharbi*; the United States cannot show it will suffer irreparable injury if Petitioner is granted injunctive relief.

    4. <u>The Issuance of the Injunction is in the Public Interest, Because Questions of Separation of Powers Affect the Fabric of Democracy.</u>

"Since questions regarding the separation of powers are fundamental to the fabric of our democracy, it is in the public interest that any question regarding the separation of powers as applied to the military commission proceedings at issue be ultimately clarified before such proceedings further ensue." *Hicks,* at 19. Here, as in *Hicks,* "it would not be in the public interest to subject [Petitioner] to a process which the highest court in the land may determine to be invalid." *See id.* at 11.

Additionally, given the intense scrutiny of the Guantánamo Bay detainees, both nationally and abroad, the public is best served by ensuring the process meets constitutional muster. Here, the validity of the military commissions is uncertain. Permitting Petitioner's case to go forward in the midst of this uncertainty would be a disservice to the public.

**Conclusion**

One cannot predict with confidence when the United States Supreme Court will decide *Hamdan*, let alone how it will decide the case. Where the case was argued at the end of March, it is reasonable to suppose that a decision will be forthcoming in a matter of a few months. Moreover, there seems a reasonable probability that if the Military Commission process, as it is now being conducted at Guantánamo, is upheld, the Court will likely offer guidance with respect to the procedures necessary to assure that the proceedings go forth with rules and procedures consonant with the United States Constitution.

DOWNS
RACHLIN
MARTIN PLLC

9

At present there are no rules of evidence, other than what the Presiding Officer, from moment to moment deems relevant. Miliary Commission Order No. 1, August 31, 2005 (hereinafter *MCO 1*), attached hereto as Exhibit I, ¶ 6(d)(1).[2] Petitioner is to be excluded from the courtroom when certain sensitive evidence against him is presented. *MCO 1*, ¶ 6(B)(3). Counsel is forbidden to share with Petitioner the contents of any evidence that is designated classified.[3] *Protective Order No. 1*, January 23, 2006, attached hereto as Exhibit J, ¶3(a)-(b); *Protective Order No. 2*, January 23, 2006, attached hereto as Exhibit K; *Protective Order No. 3*, January 23, 2006, attached hereto as Exhibit L, ¶ 5(a). The charges against Petitioner, sounding mainly in conspiracy, raise substantial questions about the viability of such charges in the context of war crimes triable by Military Commission.

A "trial" in which rules are made up *ad hoc*, in which a defendant is denied the right to confront witnesses, hear inculpatory evidence against him, or even be informed by his counsel what that evidence is so that he has an opportunity to refute it is more akin to the "proceedings" agains "Josef K." in Kafka's *Der Prozeß* than to what civilized nations, most especially the United States, are accustomed to view as a fair trial.

Until the Supreme Court has pronounced on the validity of these Commissions and offered what guidance for the future that it chooses – and until Commission procedure is reformed to comply with such guidance – the Commission proceeding against Petitioner serves

---

[2] The only rule of evidence is the Presiding Officer or the Commission as a whole believes that "the evidence would have probative value to a reasonable person." Thus, there is no advance notice to the accused of what rules will be applied.

[3] By a later Protective Order, counsel may now share "law enforcement sensitive" (but not "classified") documents with a military commission defendant, provided the names of all interrogators, witnesses, and interpreters are redacted. The proviso continues severely to restrict a defendant's ability to defend himself or communicate possible rebuttal evidence to his counsel.

no purpose other than to give the United States Government an advance peek at his defenses, to the irreparable prejudice of Petitioner.

WHEREFORE, Petitioner Jobran Saad Al-Quhtani requests this Court enter an order enjoining military proceedings against him at least until entry in the decision of *Hamdan*.

Burlington, Vermont
June 9, 2006

DOWNS RACHLIN MARTIN PLLC

By _____
Robert D. Rachlin
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
Telephone: 802-863-2375
Fax: 802-862-7512

ATTORNEYS FOR PETITIONER
JOBRAN SAAD AL-QUHTANI

BTV 496777 1