UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID M. HICKS,

      Petitioner,

v.

GEORGE W. BUSH,
    President of the United States, *et al.*,

      Respondents.

Civil Action No. 02–299 (CKK)

MEMORANDUM OPINION
(November 14, 2005)

     Presently pending before the Court is [194] Petitioner David M. Hicks's Motion to Stay Military Commission Proceedings ("Motion to Stay"). Petitioner effectively asks the Court to enjoin military commission proceedings against Petitioner in Guantanamo Bay until both the Supreme Court has issued a final and ultimate decision in the appeal of *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), and until this Court has issued an order with respect to Petitioner's pending [182] Revised Brief in Support of Petitioner David M. Hicks's Cross-Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment") in this case. Respondents, in their [196] Respondents' Opposition to Petitioner's Motion to "Stay" Military Commission Proceedings ("Opposition"), oppose Petitioner's Motion to Stay. Petitioner then filed [197] Petitioner, David M. Hicks's Reply in Further Support of his Motion to Stay Military Commission Proceedings. After careful consideration of the aforementioned pleadings and Petitioner's [77] Second Amended Petition for Writ of Habeas Corpus and Complaint for Injunctive, Declaratory and Other Relief, the Court shall enjoin Respondents from going forward with any and all legal proceedings associated with the military commission process with respect to Petitioner and shall stay the case presently

before the Court until the Supreme Court has issued a final and ultimate decision in *Hamdan*.

## I. BACKGROUND

In response to the September 11, 2001, terrorist attacks upon various targets in the United States, the U.S. military commenced operations in Afghanistan with the assistance of the Northern Alliance and Coalition forces against the Taliban and Al Qaeda in October of 2001. Petitioner David M. Hicks, an Australian citizen, was captured by the Northern Alliance and subsequently transferred to U.S. custody. 2d Am. Pet. ¶ 21. Petitioner was transported to Guantanamo Bay in January of 2002, where he has been detained in various facilities until the present time. *Id*. ¶¶ 8, 22.

On July 3, 2003, Respondent President George W. Bush "designated [Petitioner] as a person eligible for trial before the commission." *Id*. ¶ 26. On June 10, 2004, Petitioner was publicly charged with three offenses to be tried by military commission: Conspiracy, Attempted Murder by an Unprivileged Belligerent, and Aiding the Enemy. 2d Am. Pet. ¶ 29, Exh. 2 (Charge Sheet ¶¶ 19-22). The conspiracy charge more specifically alleged that Petitioner conspired and agreed with members of Al Qaeda to commit the following offenses: attacking civilians, attacking civilian objects, murder by an unprivileged belligerent, destruction of property by an unprivileged belligerent, and terrorism. 2d Am. Pet. at Exh. 2 (Charge Sheet ¶ 19). These charges were referred to the military commission on June 25, 2004. 2d Am. Pet. at Exh. 7. At an appearance before the military commission on August 25, 2004, Hicks pleaded not guilty to all charges. Pet'r's Mot. Summ. Judg. at 8.

Petitioner originally filed a petition for writ of habeas corpus with the Court on February 19, 2002. Petitioner filed an amended petition on March 18, 2002. After the Supreme Court issued its ruling in *Rasul v. Bush*, 542 U.S. 466 (2004), the Court granted Petitioner leave to file a second amended petition, which was submitted to the Court on September 28, 2004 and is the presently

operative petition in this case. In Petitioner's Second Amended Petition, Petitioner's claims for relief are premised on the lack of jurisdiction of the military commission designated to try Petitioner; the illegality of the manner in which the commission is constituted; the invalidity of the charges brought against Petitioner; the illegality of the procedures employed by the military commission; the violation of equal protection caused as a result of Petitioner's trial before a military commission as a result of his non-citizen status; and various charges related to Petitioner's classification, interrogation, and detention as an enemy combatant (including speedy trial-related allegations). 2d Am. Pet. ¶¶ 41-112.

The Appointing Authority for Military Commissions stayed the military commission proceedings in Petitioner's case via a December 10, 2004 directive in response to Judge James Robertson's ruling in *Hamdan v. Rumsfeld*, 344 F. Supp. 2d 152 (D.D.C. 2004), which invalidated the military commission proceedings at issue. A stay in Petitioner's military commission proceedings was issued pending an appellate decision in *Hamdan* by the D.C. Circuit. As a result, motions before this Court related to the military commission hearings were stayed by the Court on April 21, 2005, "pending a ruling from the Circuit Court in *Hamdan*." The D.C. Circuit then reversed Judge Robertson's decision in *Hamdan*, holding in *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), that the military commission process did not violate the separation of powers doctrine because it was backed by sufficient congressional authorization and that the Geneva Convention did not confer upon Hamdan a federal right to enforce its provisions. At the request of the parties in this case, this Court lifted the stay on August 5, 2005 with respect to Petitioner's challenges before this Court to military commission proceedings.

Once the stay in the proceedings before this Court was lifted, Petitioner initially filed a Motion for Partial Summary Judgment on August 17, 2005, requesting that the Court grant

summary judgment in favor of Petitioner on the military commission-related claims of its Second Amended Petition, including constitutional claims, by "determin[ing] now that the commission proceedings against Mr. Hicks are illegal." Pet'r's Mot. Summ. J. at 77. More specifically, Petitioner requested that "the Court find illegal the operation of a military commission seeking to try him for newly-invented military crimes . . . ." *Id*. at 1. In asking the Court to declare that military commission proceedings against Petitioner are invalid, Petitioner's Motion for Partial Summary Judgment essentially asked the Court to make five separate determinations. Petitioner asked the Court to hold that the military commission lacks the authority to try Petitioner because allegedly 1) the military commission does not have jurisdiction over Petitioner for the particular offenses with which he is charged; 2) military commission procedures violate the Due Process Clause; 3) trial of Petitioner before a military commission violates the Equal Protection Clause because U.S. citizens accused of similar offenses are not subject to trial before a military commission; 4) the military commission itself is invalidly constituted under statutory, regulatory, and constitutional law; and 5) trial before a military commission this far removed in time from Petitioner's capture would violate Petitioner's right to a speedy trial. *Id*. Respondents filed a Motion to Dismiss on August 17, 2005, requesting that "the Court [] dismiss and enter judgment for respondents on petitioner's military commission claims and otherwise deny petitioner's requests for injunctive and other relief related to military commission proceedings." Resp'ts' Mot. Dismiss at 1. Respondents alleged that the D.C. Circuit's opinion in *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), resolved the jurisdictional and many of the procedural claims raised by Petitioner both by establishing that the President had authority to establish military commissions and that the courts should abstain initially on procedural issues such as how such commission hearings are conducted. *Id*.

On September 20, 2005, the Appointing Authority in Petitioner's military commission case

reinitiated proceedings against Petitioner. Pet'r's Mot. Stay at 4. An initial hearing in Petitioner's military commission proceedings was thereafter scheduled for November 18, 2005 in Guantanamo Bay for the purpose of deciding pre-trial motions with a trial date to follow. *Id.* at 5.

While this Court was considering Petitioner's Motion for Partial Summary Judgment and Respondents' Motion to Dismiss, the Supreme Court granted *certiorari* in *Hamdan* on November 7, 2005. Consequently, Petitioner filed the present motion before this Court, Petitioner's [194] Motion to Stay Military Commission Proceedings, on November 8, 2005, asking the Court to "stay" military commission proceedings related to Petitioner until after the Supreme Court has made a final decision in *Hamdan* and until after this Court has ruled on Petitioner's Motion for Partial Summary Judgment. Petitioner asserts that he has a right to have his claim that the military commission has no jurisdiction to try him reviewed prior to any proceedings occurring before said military commission. Mot. Stay at 2. Furthermore, Petitioner claims that if he were subjected to proceedings via military commission prior to a Supreme Court ruling, which he argues will find the commission process illegitimate, he would forever lose his right to never appear before the commission. *Id.* Respondents filed their Opposition on November 10, 2005, arguing that Petitioner had not met the standard for injunctive relief and that further delay in going forward with military commission proceedings would harm Respondents and run counter to the public interest. Resp'ts' Opp'n at 2-5. Petitioner's Reply was filed on November 14, 2005.

## II.  LEGAL STANDARD

A party seeking preliminary injunctive relief must demonstrate at least some irreparable injury because " '[t]he basis of injunctive relief in the federal courts has always been irreparable harm.' " *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Thus, if the movant makes no

showing of irreparable injury, "that alone is sufficient" for a district court to refuse to grant preliminary injunctive relief. *Id.*; *see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("We believe that analysis of [irreparable harm] disposes of these motions and, therefore, address only whether the petitioners have demonstrated that in the absence of a stay, they will suffer irreparable harm."). In this Circuit, injury is irreparable only if it is "both certain and great." *Wisconsin Gas*, 758 F.2d at 674. This requires that the alleged harm "be actual and not theoretical" and " 'of such *imminence* that there is a "clear and present" need for equitable relief to prevent irreparable harm.' " *Id*. (quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976) (internal citation omitted)).

In addition to determining whether irreparable injury would occur if an injunction were not granted, a court must look at three other factors in assessing whether to grant injunctive relief: (1) whether an injunction would substantially injure other interested parties; (2) whether the public interest would be furthered by the injunction; and (3) whether the movant is substantially likely to succeed on the merits. *See Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin.*, 58 F.3d at 746 (D.C. Cir. 1995)). In applying this four-factored standard, no single factor is dispositive; rather the Court "must balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed*, 58 F.3d at 747. This calculus reflects a sliding-scale approach in which an injunction may issue if the arguments for one factor are particularly strong "even if the arguments in other areas are rather weak." *Id*.

Furthermore, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

6

## III.  DISCUSSION

*A.      Military Commission Proceedings*

Petitioner and Respondents having submitted themselves to the jurisdiction of this Court, and the Court having asserted *in personam* jurisdiction, *see Rasul v. Bush*, 542 U.S. 466 (2004), the Court has the authority to enjoin Respondents with respect to all proceedings applicable to petitioners, including without limitation their adjudication in related matters and their release.  The Respondents in fact do not argue that the Court does not have the authority to enjoin Respondents from subjecting Petitioner to military commission proceedings; Respondents limit their argument to the premise that in this particular case, the Court should not issue an injunction.  The Court will only engage in a limited discussion of the applicability of the All Writs Act, 28 U.S.C. § 1651(a), since this is not an issue in contention between the parties.

The All Writs Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  *See also S.E.C. v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) ("[T]he All Writs Act, 28 U.S.C. § 1651(a), empowers a district court to issue injunctions to protect its jurisdiction.").  Under the law as articulated by the D.C. Circuit in *Hamdan*, it is within the province of a district court to determine whether a military commission has jurisdiction over a particular individual *prior* to that individual's adjudication by a military commission.  *Hamdan*, 415 F.3d at 36-37.  Thus, the Court has the authority to enjoin Respondents from going forward with military commission proceedings against Petitioner.  An injunction in this case is necessary in order for this Court to maintain its jurisdiction over Petitioner's claim that a military commission lacks jurisdiction to try him, a claim which Petitioner is entitled to have adjudicated by this Court prior to trial before a military commission.  While

granting an injunction under the All Writs Act is normally considered an extraordinary remedy, the posture of this case and the importance of the issues involved call for this extraordinary measure to be imposed. It is important to note in this case that *certiorari* has actually been granted in *Hamdan* by the Supreme Court, which may have an effect on Petitioner's established right to pre-commission review of jurisdictional issues. This is not a case where the grant of *certiorari* has not been determined.

The Court clearly has the authority to enjoin Respondents from subjecting Petitioner to proceedings before a military commission before the Supreme Court makes a determination regarding the proper jurisdiction of a military commission created under the Presidential Military Order[1] ("PMO") authorizing the detention of non-citizens for violations of the laws of war and other applicable laws via military tribunals. The Court will next analyze whether the four-pronged standard for injunctive relief articulated in *Mova Pharmaceutical Corp.* and *CityFed Financial* has been met such that an injunction can be properly issued.

> 1. *Petitioner would suffer irreparable injury if Respondents go forward with military commission proceedings against Petitioner under present circumstances*

The Court agrees that subjecting Petitioner to proceedings before a tribunal presently under jurisdictional scrutiny by the highest court in the land, the Supreme Court, before it makes an ultimate ruling on whether or not said tribunal is jurisdictionally sound would cause irreparable injury to Petitioner. Petitioner faces the clear and imminent risk of being subjected to a military commission which has not been ultimately determined by the Supreme Court to have jurisdiction over Petitioner. Furthermore, if Petitioner's scheduled military commission motions hearing and

---

[1] Military Order of November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 Fed. Reg. 57833 (Nov. 16, 2001).

consequent trial goes forward and the Supreme Court later determines that said military commission lacks jurisdictional authority, "setting aside the judgment after trial and conviction insufficiently redresses [Petitioner's] right not to be tried by a tribunal that has no jurisdiction." *Hamdan*, 415 F.3d at 36 (citing *Abney v. United States*, 431 U.S. 651, 662 (1977)).

Respondents claim that "petitioner is unable to prove either that harm has occurred in the past or is certain to occur in the near future," alleging that Petitioner "only offers speculative allegations of harm that might occur in the future." Resp'ts' Opp'n at 6. Respondents miss the crux of the irreparable injury that Petitioner faces if tried by a tribunal consequently deemed not to have jurisdiction over him–the fact that he would have been tried by a tribunal without any authority to adjudicate the charges against him in the first place, potentially subjecting him to a second trial before a different tribunal.

Because a military commission motions hearing is scheduled for November 18, 2005, the threat is imminent that Petitioner will be subjected to proceedings before a tribunal for which jurisdictional questions have been certified for review by the Supreme Court. Because proceedings which ultimately may be determined to be unlawful cannot be "undone," and because jurisdictional authority is requisite for legal proceedings before any tribunal, the Court finds that Petitioner in this case faces irreparable injury absent an injunction against Respondents' continuation of military commission proceedings against him before the Supreme Court makes its ruling in *Hamdan*.

> 2. *Respondents would suffer minimal harm of a largely logistical nature if an injunction is granted*

Respondents claim that issuance of an injunction would "result in substantial harms" to the government because of the "further and lengthy delays in carrying out an important aspect of the war effort" that would result. Resp'ts' Opp'n at 2, 3. Considering that Petitioner in this case has

been held by the U.S. government since November of 2002 and in the event of an injunction that he will simply continue to be detained by the government, the Court fails to see how further delay will harm the government. In fact, the "harms" the government claims will be caused by such a delay are not evidentiary or prejudicial in nature but are instead largely logistical concerns. For example, Respondents claim that the "enormous amount of time and resources" spent by the government in preparation for Petitioner's hearing and trial will be largely lost if an injunction is granted. The Court notes that Petitioner has presumably also been preparing for trial. However, Respondents do not explain how a delay in Petitioner's proceedings, should the Supreme Court affirm that a military commission has jurisdiction over Petitioner, would somehow nullify the time and resources that the Court presumes would have to be expended regardless of when Petitioner's trial before a military commission occurred. Furthermore, Respondents claim that while a few individuals have already departed for Guantanamo Bay in preparation for Petitioner's scheduled November 18, 2005 motions session, a larger number of individuals and press members are scheduled to fly out on or after November 15, 2005. Resp'ts' Opp'n at 4. Since the Court has taken this into consideration in expeditiously ruling on Petitioner's Motion and Respondent's Opposition by November 14, 2005, the government's argument on this point is largely moot. Finally, Respondents express their concern that an injunction in Petitioner's case could also disrupt other military commission proceedings. However, since the Court can only consider the case and parties before it and Respondents raise a speculative argument, the Court cannot assess that an injunction respecting Petitioner will harm Respondents by taking unrelated proceedings into account. Thus the Court does not consider the minor logistical reshuffling caused by an injunction to constitute injury to Respondents in any material fashion.

> 3. *It is in the public interest that* Hamdan *be decided by the Supreme Court before Petitioner is subjected to proceedings before a military commission*

One of the questions that the Supreme Court will address in its review of *Hamdan* is whether the military commission in question violates the separation of powers based on a lack of sufficient congressional authorization for the executive proceedings at issue. Since questions regarding the separation of powers are fundamental to the fabric of our democracy, it is in the public interest that any question regarding the separation of powers as applied to the military commission proceedings at issue be ultimately clarified before such proceedings further ensue.

Respondents claim that an injunction would harm the public interest because "[a] decision by the Court to enjoin the military commission from proceeding with petitioner's case would be an intrusion by the Judiciary into the realm of the Executive and would hurt the public interest in the separation of powers." Resp'ts' Opp'n at 3-4. However, Respondents base this argument on the longstanding support of both Congress *and* the Judiciary for the Executive's use of military commissions during wartime as well as the D.C. Circuit's confirmation in *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), of the use of such commissions specifically in the conflicts against the Taliban and Al Qaeda. Resp'ts' Opp'n at 3. Thus, Respondents essentially make an argument for the authority of the Judiciary to act as a confirmation and check on the Executive's use of military commissions in particular contexts. In this instance, the Supreme Court's review of *Hamdan*, the very decision cited by Respondents, will serve as the ultimate confirmation of and check on the Executive's authority to subject Petitioner to the jurisdiction of a military commission. To await review by the Supreme Court is in compliance with rather than counter to the separation of powers principle that the Court agrees is in the public interest. It would not be in the public interest to subject Petitioner to a process which the highest court in the land may determine to be invalid. It is in the public interest to have a final decision, leaving no doubts as to this key jurisdictional issue, before Petitioner's military commission proceedings begin.

          4.      *Considerations relating to a substantial likelihood of success on the merits to warrant injunctive relief*

Finally, in order to meet the standards necessary for injunctive relief, Petitioner must establish "a likelihood of success on the merits." *See Sea Containers, Ltd v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989). Unlike the typical situation in which a court is confronted with a request for an injunction, i.e., before a final adjudication on the merits of a party's claim has occurred, the D.C. Circuit has directly spoken on the issue central to Plaintiff's Second Amended Petition and his Motion for Partial Summary Judgment in *Hamdan*, which rejected Petitioner's jurisdictional arguments. *Hamdan*, 415 F.3d at 37–38. Accordingly, bound by a decision of the Court of Appeals within this Circuit, this Court recognizes that an automatic application of the holding in *Hamdan* to this case virtually eliminates Petitioner's "likelihood of success on the merits" and could be viewed as undermining Petitioner's case for injunctive relief.

However, two considerations compel the Court to look beyond this unreflective analysis. First, a petitioner is not required to prevail on each of the four factors relevant when confronted with a request for injunctive relief. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Rather, under *Holiday Tours*, the factors must be viewed as a continuum, with more of one factor compensating for less of another. As such, a court may issue an injunction if the arguments for one factor are particularly strong, "even if the arguments in other areas are rather weak." *CityFed*, 58 F.3d at 747. An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id*. Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. *Holiday Tours*, 559 F.2d at 843-45. The necessary level or degree of likelihood of

success that must be shown will vary according to the Court's assessment of the other three factors. *Id*. In sum, an injunction may be issued by a court "with either a high probability of success and some injury, or *vice versa*." *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). Here, as discussed *supra*, Petitioner faces clear irreparable injury, while there is virtually no harm to Respondents through a short delay in the adjudication of Petitioner's charges and the public interest strongly favors a final resolution of the jurisdictional question by the Supreme Court before Petitioner's military commission proceedings begin.

Second, while the Court in this memorandum expresses no opinion as to the viability of the D.C. Circuit's decision in *Hamdan*, the Court emphasizes that *Hamdan* is a unique, highly contentious case involving unprecedented and high-profile claims regarding the propriety of military commission jurisdiction. Recognizing the importance of the D.C. Circuit's ruling in *Hamdan* and the "substantial" issues raised by those challenging the military commission's jurisdiction, the Supreme Court has already granted *certiorari* in the case for immediate briefing and oral argument this term. As such, a full and complete resolution by the highest court in the land of the claims underlying Plaintiff's Second Amended Petition and his Motion for Partial Summary Judgment is on the immediate horizon. Given the immediate, definitive resolution of the issues relevant to this case by the Supreme Court and the strong showing by Petitioner as to the other three factors of the injunction analysis, the Court finds that granting an injunction in this unique context would rightfully "preserve the relative positions of the parties" until the full and complete contours of military commission jurisdiction are elucidated by the nation's highest appellate court.

    B.    *Stay in Present Case before the Court*

The issues raised in Petitioner's Second Amended Petition related to military commission proceedings, Petitioner's Motion for Partial Summary Judgment, and [174, 175] Respondents'

Renewed Response and Motion to Dismiss or for Judgment as a Matter of Law with Respect to Petitioner's Challenges to the Military Commission Process ("Motion to Dismiss") were considered by the D.C. Circuit in *Hamdan*. A court considers a request for a stay on a sliding scale; if irreparable harm is shown, it will grant a stay so long as there is some reasonable likelihood that the movant will prevail on the merits. *See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977). In this case, jurisdiction of the military commission preparing to try Petitioner is a predicate issue. As demonstrated above, Petitioner has shown that irreparable injury will flow from his adjudication before a commission that could be held by the Supreme Court to lack jurisdiction over him entirely. If *Hamdan* is upheld by the Supreme Court, then this Court's consideration of the other issues raised by Petitioner that address the commission's procedural aspects will be ripe for adjudication. If the Supreme Court reverses the decision, then Petitioner's claims related to the commission will be rendered moot. Therefore, the Court shall stay all proceedings in this case before the Court pending a ruling by the Supreme Court in *Hamdan* to prevent irreparable injury to Petitioner based on the reasoning above, in the interest of judicial economy, and to avoid the expenditure of unnecessary resources by both parties.

## IV. CONCLUSION

In keeping with the foregoing reasoning, Petitioner's [194] Motion to Stay Military Commission Proceedings is GRANTED such that Respondents are enjoined from going forward with any and all legal proceedings associated with the military commission process with respect to Petitioner based on the Supreme Court's grant of *certiorari* in *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), and pending the issuance of a final and ultimate decision by the Supreme Court in that case. The proceedings in this case also shall be STAYED for all purposes based on the

Supreme Court's grant of *certiorari* in *Hamdan*, and pending the issuance of a final and ultimate decision by the Supreme Court in that case.

Date: November 14, 2005

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
